**J. LYONS & COMPANY LTD.
and Tetley Inc., Plaintiff,**

v.

**The REPUBLIC OF TEA,
INC., Defendant.**

**J. LYONS & COMPANY LTD.
and Tetley Inc., Plaintiff,**

v.

**CONOPCO INC., d/b/a Thomas
J. Lipton Co., Defendant.**

**J. LYONS & COMPANY LTD.
and Tetley Inc., Plaintiff,**

v.

**INTERPORT NATIONAL CORP., d/b/a
Barrows Tea Co., Defendant.**

**Nos. 94 Civ. 8976 (SAS), 94 Civ. 8877
(SAS) and 95 Civ. 0151 (SAS).**

United States District Court,
S.D. New York.

April 12, 1995.

Ira Cohen, Charles E. Baxley, Joseph T. Murray, Hart, Baxley, Daniels & Holton, New York City, for plaintiffs J. Lyons & Co., Ltd. and Tetley Inc.

Sandra Edelman, Townley & Updike, New York City and John W. Crittenden, Anne H. Peck, Noel C. Johnson, Cooley Godward Castro Huddleson & Tatum, San Francisco, CA, for defendant The Republic of Tea, Inc.

Jeffrey A. Conciatori, Lisa Simpson, Donovan Leisure Newton & Irvine, New York City and Roberta Jacobs–Meadway, James R. Meyer, Panitch Schwarze Jacobs & Nadel, P.C., Philadelphia, PA, for defendant Conopco Inc., d/b/a Thomas J. Lipton Co.

Franklin E. Parker, Morristown, NJ, and Daniel C. Perry, Perry, Hicks, Crotty &

Mitchell, New Bedford, MA, for defendant Interport Nat. Corp., d/b/a Barrows Tea Co.

### *MEMORANDUM OPINION*

SCHEINDLIN, District Judge.

## I. INTRODUCTION

On December 14, 1994, plaintiffs J. Lyons & Company Ltd. and Tetley Inc. ("Lyons") filed suit against The Republic of Tea, Inc. ("Republic") for (1) trademark infringement under Section 32 of the Lanham Trade–Mark Act, 15 U.S.C. § 1114, (2) unfair competition under Section 43(a) of the Trade–Mark Act, 15 U.S.C. § 1125(a), (3) common law trademark infringement, (4) common law unfair competition, (5) deceptive trade practices under New York General Business Law § 133 and (6) trademark dilution under New York General Business Law § 368–d. Lyons also filed identical claims against two other tea vendors, *J. Lyons & Company Ltd. and Tetley Inc. v. Conopco Inc., d/b/a Thomas J. Lipton, Inc.* ("Lyons v. Lipton") (94 Civ. 8877),[1] filed on December 8, 1994, and *J. Lyons & Company Ltd. and Tetley Inc. v. Interport National Corp., d/b/a/ Barrows Tea Co.* ("Lyons v. Barrows") (95 Civ. 0151), filed on January 10, 1995.

In addition to these three New York actions, three related actions are also pending. Republic has filed a declaratory judgment action against Lyons in the Northern District of California, Lipton has filed a declaratory judgment action against Lyons in New Jersey, and Barrows has filed a declaratory judgement action against Lyons in Massachusetts. All three of the declaratory judgment actions were filed before Lyons filed any of its actions in the Southern District of New York ("New York").

In response to the New York actions brought by Lyons, each defendant filed motions to dismiss, stay or transfer the actions in favor of the first-filed declaratory judgment action.[2] These motions are now pending before the Court.

## II. FACTUAL BACKGROUND

These disputes concern the use of round-shaped tea bags by Republic, Lipton and Barrows. Lyons, a British corporation, is the source of the tea products marketed by Tetley, a Delaware corporation with its principal place of business in Connecticut. Complaint in *Lyons v. Barrows* at ¶¶ 6, 8–10. Tetley is a wholly owned U.S. subsidiary of Lyons, which sells and distributes tea products in the United States. *Id.* at ¶ 9. Lyons adopted the Round Tea Bag Design on May 1, 1989 and first used this mark in the United Kingdom. *Id.* at ¶ 15. On January 4, 1991, Tetley introduced and began using the Round Tea Bag Design in United States commerce. *Id.* at ¶ 16. Lyons was issued Trademark Registration No. 1,839,551 on June 14, 1994 for a Round Tea Bag Design. *Id.* at ¶ 20. Between 1991 and 1993, Lyons sold over $25 million dollars worth of the Tetley round tea bags, *id.* at ¶ 37; and in 1994, Lyons' and Tetley's combined revenue was in excess of one billion dollars. Declaration of William Rosenzweig, President of Republic, dated January 19, 1995 ("Rosenzweig Decl."), at ¶ 3.

A summary of the facts surrounding each of the separate actions filed by Lyons is set forth below.

### A. REPUBLIC

Republic, a California corporation, was founded in 1992. Rosenzweig Decl. at ¶ 2. Its principal place of business and only offices are located in Novato, California. *Id.* All of Republic's thirty employees are located

---

**1.** According to the named defendant Lipton, "Thomas J. Lipton, Inc." was merged into Conopco Inc. in 1992 and therefore, "Thomas J. Lipton, Inc." did not exist at the time of the acts complained of in this action. Conopco has agreed to participate in this lawsuit if it is properly named and requests that the caption be amended, by stipulation or order, to properly identify "Conopco Inc. d/b/a Thomas J. Lipton Co." as the proper defendant. Plaintiff has agreed to stipulate to amend the Complaint under Fed.R.Civ.P. 15(a) to add Conopco Inc. and

Thomas J. Lipton Co. as additional party-defendants. Accordingly, the Court grants leave to amend the Complaint, pursuant to Rule 15(a), to change the name of the defendants to "Conopco Inc. d/b/a Thomas J. Lipton Co." from "Thomas J. Lipton, Inc.".

**2.** Oral arguments were heard by this Court on February 21, 1995. Lyons, Republic and Lipton attended.

in California. *Id.* Republic's sales revenues for 1994 were approximately $5 million of which seventy percent were in Northern California. *Id.* at ¶ 3. Republic's sales revenues are projected to be $6 million for 1995. *Id.* Republic began using round-shaped tea-bags in May of 1992. Declaration of John W. Crittenden, Republic's counsel, dated January 18, 1995 ("Crittenden Decl.") at Exh. F, ¶ 8.

Lyons wrote to Republic on October 11, 1994, demanding that Republic cease and desist from infringement of Lyons' trademark Round Tea Bag Design. *Id.* at ¶ 2. This letter's only reference to legal action was that Lyons "will be constrained to pursue appropriate legal steps against" Republic if Republic choose not to comply. *Id.* at Exh. A.

On November 8, 1994, Republic denied Lyons' claim to a trademark on the round tea bag. *Id.* at ¶ 8. In addition, on November 8, 1994, Republic filed a complaint for declaratory relief in the Northern District of California. *Id.* at ¶ 7. Republic's declaratory judgment action seeks a judicial determination under 28 U.S.C. §§ 2201 and 2202 as to (1) the protectibility of round tea bags and the its right to use its round tea bags and as to (2) the validity, nature and scope of Lyons' trademark registration. Complaint in *Republic v. Lyons* at ¶¶ 25, 30. Lyons initially responded by stating that it would take the matter under advisement. Crittenden Decl. at Exh. I. Two weeks later, however, Lyons renewed its cease and desist demands. *Id.* at Exh. J.

### B. LIPTON

Conopco Inc. ("Lipton"), a Delaware corporation with its principal place of business in New Jersey, has manufactured and marketed tea products in the United States since 1893. Declaration of John C. Young, Lipton's counsel, dated January 20, 1995 ("Young Decl."), at ¶¶ 6–7. In June of 1993, Lipton began advertising and selling its "Lipton Rounds" family size tea bags. *Id.* at ¶ 4. In July, 1994, Lyons charged Lipton with trademark infringement and demanded that Lipton remove its "Lipton Rounds" tea product from the market. *Id.* at ¶ 8. Thereafter, on No-

vember 4, 1994, Lyons demanded Lipton cease and desist from infringing Lyons' Round Tea Bag Design trademark, *id.* at ¶ 9, and indicated that its attorneys were authorized to consider taking legal action should Lipton not comply. Declaration of Ira Cohen, Lyons' counsel, in *Lyons v. Lipton,* dated January 31, 1995 ("Cohen Decl. in *Lyons v. Lipton*"), at Exh. A.

On November 14, 1994, Lipton refuted Lyons' claims. *Id.* at Exh. D. On November 16, 1994, Lyons informed Lipton that it would take Lipton's response under advisement and once again reiterated its cease and desist demands. *Id.* at Exh. E. On November 23, 1994, Lipton filed an action for declaratory relief in the District Court of New Jersey. Lipton's declaratory judgment action seeks a judicial determination (1) invalidating Lyons' trademark and cancelling the registration, (2) declaring that Lipton has not infringed Lyons's trademark registration by marketing round-shaped tea bags, (3) declaring that Lipton has not engaged in acts of unfair competition under either § 43 of the Lanham Act or New Jersey law, (4) declaring that Lipton has not violated any rights of Lyons in manufacturing and marketing its Lipton Round tea bag products, and (5) enjoining Lyons from alleging infringement in relation to the trademark in dispute in the future. Complaint in *Lipton v. Lyons* at ¶¶ 7, 8.

### C. BARROWS

Barrows, a Massachusetts corporation, has sold loose tea for ten years. Affidavit of Samuel M. Barrows, President of Barrows, dated February 10, 1995 ("Barrows Aff."), at ¶ 2. In 1992, it started selling bagged tea in round unbleached paper. *Id.* at ¶ 3. It now sells only bagged tea. *Id.* Barrows sells Indian, Japanese, and Ceylon teas which are marketed to restaurants and specialty food stores. *Id.* In the fiscal year ending June 30, 1994, Barrows' total sales were approximately $30,000.00 and are expected to be $100,000.00 in the fiscal year ending June 30, 1995. *Id.* at ¶ 4. Forty-one percent of Barrows' sales for the past year were in Massachusetts, whereas sales in New York amounted to only $2,500.00. *Id.* at ¶ 5.

On September 29, 1994, Lyons wrote to Barrows demanding it cease and desist from infringing Lyons' Round Tea Bag Design trademark. Affidavit of Daniel C. Perry, Barrows' counsel, dated February 10, 1995 ("Perry Aff."), at ¶ 2. The Lyons letter indicated that "unless [Barrows] ceases and desists immediately ... Lyons and Tetley w[ould] be constrained to pursue appropriate legal step against Barrows. ... [and that the attorneys] have been authorized to consider taking suitable legal and equitable action." *Id.* at Exh. A. Barrows declined to comply with Lyons' demands on October 5, 1994. *Id.* at Exh. B. In response, Lyons continued sending Barrows its cease and desist demands. Perry Aff. at ¶ 3. Thereafter, on January 4, 1995, Barrows filed a complaint against Lyons in the United States District Court for the District of Massachusetts. *Id.* at ¶ 4. Barrows' declaratory judgment action seeks a judicial determination under 28 U.S.C. §§ 2201 and 2202 as to (1) the protectibility of the round tea bags and its right to use its round tea bags and as to (2) the validity, nature and scope of Lyons' trademark registration. Complaint in *Barrows v. Lyons* at ¶¶ 25, 29. Barrows also claims Lyons' demands were unfair and deceptive acts or practices in trade or commerce, which are prohibited by Massachusetts General Laws, Chapter 93A, section 2. *Id.* at ¶ 31.

## III. DISCUSSION

All three defendants rely on the first-to-file rule and 28 U.S.C. 1404(a) to support their motions to dismiss, stay or transfer the present New York actions. In addition, Republic has argued that the New York action must be dismissed because Lyons' claims are compulsory counterclaims under Fed. R.Civ.P. 13(a).[3]

### A. The Plaintiff's Claims are Compulsory Counterclaims

Rule 13(a) requires a pleading to state as a counterclaim any claim that arises out of the "transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." The judicial determination sought by the defendants in their respective declaratory relief actions is whether their use of a round-shaped tea bag infringes any trademark of Lyons. Lyons' complaints against all three defendants claims federal trademark infringement, federal unfair competition, common law trademark infringement, common law unfair competition, and violations of New York statutes regarding deceptive trade practices and trademark dilution. The subject matter of all these claims, both the defendants' and plaintiff's, is the use and validity of the round-shaped tea bag and round-shaped tea bag design. As such, Lyons' claims are compulsory counterclaims under Rule 13(a).

■ While the filing of the compulsory counterclaims in a separate action is not a violation of Rule 13(a), it does contravene the purpose of the Rule in that it creates a multiplicity of actions, wastes judicial resources, and unduly burdens the litigation process. *See Adam v. Jacobs,* 950 F.2d 89, 93 (2d Cir.1991). The question, then, is whether this Court should hear claims that are compulsory counterclaims to the first-filed action.

### B. The First-to-File Rule Requires the Second-Filed New York Actions to be Dismissed In Favor of the First-Filed Actions

■ The first-to-file rule gives priority to the first-filed suit except where there are special circumstances which justify giving priority to the second-filed suit or a showing of a balance of circumstances favoring the second-filed suit. *See, e.g., Adam,* 950 F.2d at 92; *First City Nat'l Bank & Trust Co. v. Simmons,* 878 F.2d 76, 79 (2d Cir.1989); *E.E.O.C. v. Univ. of Pa.,* 850 F.2d 969, 972 (3rd Cir.1988) ("inequitable conduct, bad faith, or forum shopping" justify departure

---

**3.** Barrows also moves pursuant to Rule "12(2)" but the Court assumes that Barrows intended to reference Rule 12(b)(2). Motion of Defendant to Dismiss, Stay or Transfer, dated February 10, 1995, at 1. Because the Court is disposing of this motion on other grounds, it does not need to reach this issue.

from the first to file rule); *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978). Special circumstances may exist where there are several actions presenting the same issue pending in the district of the second-filed suit and the first-filed declaratory judgement action had been filed in anticipation of the second suit or where forum shopping alone motivated the choice of forum in the filing of the first suit. The defendants, as the moving parties, bear the burden of demonstrating that the forum where the actions were first filed is the appropriate forum. *See Factors*, 579 F.2d at 218.

### 1. There Are No Special Circumstances Which Favor the Second–Filed New York Action

■ Lyons contends that a special circumstance in its favor is that it provided each defendant with notice of suit prior to the filing of any of the declaratory judgment actions. When a notice letter informs a defendant of the intention to file suit, a filing date, and/or a specific forum for the filing of the suit, the courts have found, in the exercise of discretion, in favor of the second-filed action. *See, e.g., Factors*, 579 F.2d at 217, 219 (letter stating defendant would be subject to litigation for injunctive relief, damages and an accounting unless defendant discontinued sales of the infringing product provided defendant with notice); *Federal Insurance Co. v. May Dept. Stores, Co.*, 808 F.Supp. 347, 350 (S.D.N.Y.1992) (filing of a declaratory action with notice of lawsuit stating that if claim is not satisfied by a specific date, then defendant would sue, led to inference that plaintiff was forum shopping); *Employers Insurance of Wausau v. Prudential Insurance Co.*, 763 F.Supp. 46, 49 (S.D.N.Y. 1991) (notice which stated "hoped to avoid litigation" was an attempt to initiate settlement negotiations rather than notice of suit and as such require the plaintiff's first-filed suit to proceed).

■ There is no indication here that defendants actually anticipated litigation or engaged in forum shopping. While all defendants received cease and desist letters, they did not have actual notice of litigation. Although Lyons mentioned the possibility of legal actions, it did not specify any date or forum. Indeed, when Republic refused to cease and desist, Lyons responded that it would take the response "under advisement," Crittenden Aff. at Exh. I, and when Barrows refused, Lyons kept up its barrage of cease and desist letters. Perry Aff. at ¶ 3. Lyons' behavior did not indicate that it was about to file suit; rather Lyons' actions were indicative of negotiations.[4]

Lyons also argues that the filing of the declaratory actions was a race to the courthouse resulting in barely disguised forum shopping. The facts here compel the Court to reject Lyons' argument. Each defendant responded to Lyons' cease and desist letters by denying the alleged infringement. When no understanding was reached and Lyons continued its cease and desist letters, the defendants had every right to seek a definitive resolution of the issues. The defendants appropriately filed their actions in the forum most convenient to them. Had Lyons feared litigation in an inconvenient forum, it had plenty of time to file actions in New York before the respective declaratory judgement actions were filed.

Lyons also asserts that there is a general presumption against declaratory judgment actions. *Tempco Elec. Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746, 749–50 (7th Cir.1987). However, this circuit has not followed *Tempco*. Merely filing a declaratory action does not indicate forum shopping. When, however, a declaratory judgment action is filed after notice of suit is given, it may be indicative of anticipatory litigation and may fall within the scope of the first-to-file exception. As discussed above, this is not the case in these actions.

### 2. The Balance of Convenience Does Not Favor New York

■ Lyons contends that the balance of convenience dictates that these cases remain in New York because it is the most convenient forum. In analyzing the balance of

---

4. In fact, at oral arguments, plaintiff conceded that it did not expect to litigate with Republic or Barrows. Transcript of Oral Argument, February 21, 1995 ("Tr."), at 27.

convenience, the Court considers the factors applicable to a motion for a change of venue pursuant to 28 U.S.C. § 1404(a). *See 800–Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F.Supp. 128, 133 (S.D.N.Y.1994).

■ These factors include (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Id.*

■ The first factor, convenience of witnesses, does not favor New York. While the witnesses Lyons expects to call are located in New York, Connecticut and England, Declaration of Joseph T. Murray, Lyons' counsel, dated February 28, 1995 ("Murray Decl. for *Lyons v. Barrows*"), at ¶¶ 4–9, Republic's witnesses are predominately located in California, Letter from Crittenden dated February 21, 1994, Lipton's witnesses are all or mostly in New Jersey, Declaration of Lawrence E. Hicks, Lipton's counsel, dated February 15, 1995 ("Hicks Decl."), at ¶ 2, and Barrows' witnesses are located in Massachusetts, New York City and England. Barrows Aff. at ¶¶ 7, 9. Because any forum will be inconvenient to either plaintiff or defendants, this factor does not overcome the presumption in favor of the first-filed forum.

The second factor likewise does not favor New York. All of Republic's business records are maintained in California, Rosenzweig Decl. at ¶ 2, all of Lipton's documents and records concerning the design, development, and marketing of Lipton Rounds family size tea products are located in New Jersey, Young Decl. at ¶ 7, and all of Barrows' business records are located in Massachusetts. Barrows Aff. at ¶ 8. Although Lyons has identified some New York witnesses, Lyons has not asserted that its business records are located in New York. Murray Decl. for *Lyons v. Lipton* at ¶¶ 1–14.

The third factor, the convenience of the parties, favors the defendants. In each case, the defendant filed in the district where the company had its primary place of business and, in the case of Republic and Barrows, where they were incorporated. On the other hand, Lyons is neither incorporated in New York, nor does it have its primary place of business in New York. The only real connection Lyons has to New York is that New York is where Lyons' attorneys are located.

The fourth factor, locus of the operative facts, favors the forum of the first-filed action. While Lyons correctly asserts that claims for trademark infringement or unfair competition may be brought "where the passing off occurs," that does not necessarily favor one such location over another. *Schieffelin & Co. v. The Jack Co. of Boca, Inc.*, 725 F.Supp. 1314, 1319–21 (S.D.N.Y. 1989). *See also French Transit, Ltd., v. Modern Coupon Systems, Inc.*, 858 F.Supp. 22, 25 (S.D.N.Y.1994). In *Schieffelin*, for example, the court found that the defendant sold the majority of its products in New York. *Schieffelin*, 725 F.Supp. at 1321. Here, the actions could be brought in any of the four jurisdictions. While Lyons and Lipton sell their products nationwide, Barrows' and Republic's sales are concentrated in Massachusetts and California.

The fifth factor, availability of process to compel attendance of unwilling witnesses, is not determinative since each district will be faced with this dilemma and none has a significant advantage over the other. The sixth factor, the relative means of the parties, favors the forum of the first-filed actions, at least in the case of Barrows and Republic. Both these companies are significantly smaller than either Lipton or Lyons and would bear a significant and disproportionate economic burden if forced to litigate in New York.

The seventh factor, the forum's familiarity with the governing law, does not favor any party. While Lyons asserts that it would be at a disadvantage if the cases are heard outside New York as a result of alleging violations of New York law, the other parties are also bringing state law claims.

The eighth factor, the weight accorded a plaintiff's choice of forum, is accorded less weight when the plaintiff has filed neither in his home state nor where the cause of action arose. *See 800–Flowers,* 860 F.Supp. at 135. Here, Lyons has not filed in the state where it is incorporated or where its principal place of business is located. Also, as discussed above, the operative facts are not closely linked to New York.

Finally, trial efficiency and the interests of justice, based on the totality of the circumstances, dictate that the forums of the first-filed suits are the more convenient forums. The litigation of trademark infringement and unfair competition involve two key issues, likelihood of confusion and first use. The evidence on these issues is tied to the region of the sales. Discovery will be required in each of the areas where Barrows and Republic has its primary market. Furthermore, the issue of confusion depends on the product sold. Lipton, for example, sells a large round tea bag while Republic and Barrows sell individual sized tea bags. Also, likelihood of confusion will entail different evaluations as Barrows and Republic sell specialty teas as opposed to the type of tea sold by Lipton and Lyons. Therefore, it is inefficient to keep these actions in New York.

C. THE ISSUE OF TRADEMARK REGISTRATION VALIDITY SHOULD NOT BE BIFURCATED

 Plaintiff has proposed that the validity of the trademark should be resolved in one district to minimize expenses and to avoid litigation of the same issue in three different districts. In this Circuit, the plaintiff must prove a prima facie case of infringement prior to any consideration of affirmative defenses such as the functionality of the design. *See Black & Decker, Inc. v. Hoover Service Center,* 886 F.2d 1285, 1292 (Fed.Cir. 1989); *Stormy Clime Ltd. v. ProGroup, Inc.,* 809 F.2d 971, 974 (2d Cir.1987); J. Thomas McCarthy, *McCarthy on Trademarks* § 7.26[3][a] (1992). Thus, while functionality might be a defense which the defendants will raise in every jurisdiction, the court must

first determine "secondary meaning" and "likelihood of confusion". As discussed above, the forums of the first-filed actions are better suited to determine these issues. Therefore, this Court will not bifurcate the issue of functionality.[5]

IV. CONCLUSION

 The first-to-file rule, which places a strong presumption in favor of the first-filed suit, dictates that the New York actions be dismissed in favor of the forums of the first-filed actions. This is especially the case where, as in the instant case, there are no special circumstances which justify allowing the second-filed suit to proceed, and where there is no balance of convenience which suggests that this Court allow the second-filed actions to proceed. Accordingly, the Court grants the motions to dismiss. Lyons may file its claims as compulsory counterclaims in the respective districts of the first-filed actions.

SO ORDERED.

---

5. The parties have agreed, to the extent possible, to coordinate discovery on this issue. Tr. at 23–24, 34–35; Letter from Crittenden dated February 21, 1995 at 2; Letter from Cohen dated February 22, 1995 at 2; Letter from Jacobs–Meadway dated February 24, 1995 at 2.