BUDDYUSA, INC. and Abovepeer, Inc., Plaintiffs–Appellees,

v.

RECORDING INDUSTRY ASSOCIATION OF AMERICA, INC. A & M Records, Inc ., Arista Records, Inc., Bmg Music, d/b/a The RCA Records Label, Capitol Records, Inc, Geffen Records, Inc., Interscope Records, Island Records, Inc., Laface Records, a joint venture partnership between Arista Ventures, Inc, Laface Records, Inc., MCA Records, Inc ., Motown Record Company, L.P., Polygram Records, Inc., Sony Music Entertainment Inc., Universal Records, Inc., and Virgin Records America, Inc., Defendants–Appellants.

ATLANTIC RECORDING CORPORATION, Elektra Entertainment Group, Inc., Sire Records Group Inc., and Warner Brothers Records, Inc., Defendants.

Nos. 01–7760(L), 01–7761(CON).

United States Court of Appeals, Second Circuit.

Oct. 11, 2001.

George F. Carpinello, Boies, Schiller & Flexner LLP, Albany, NY, David Boies, Boies, Schiller & Flexner LLP, Armonk, NY; Martin G. Deptula, Boies, Schiller & Flexner LLP, Albany, NY; James D. Linnan, John L. Shea, Linnan & Fallon LLP, Albany, NY, on brief, for plaintiffs-appellees.

Leon P. Gold, Proskauer Rose LLP, New York, NY, Carla M. Miller, Proskauer Rose LLP, New York, NY, Russell J. Frackman, Marc E. Mayer, Mitchell Silberberg & Knupp LLP, Los Angeles, CA, on brief, for defendants-appellants.

Present CHESTER J. STRAUB, ROBERT A. KATZMANN and FRANK J. MAGILL,* Circuit Judges.

## SUMMARY ORDER

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is AFFIRMED.

The parties to this appeal are currently locked in multiple law suits in venues throughout the United States. Those law suits share the common issue of whether the plaintiffs' on-line file sharing service, Aimster, violates the copyrights held by the defendants. This appeal, however, concerns the limited question of whether the District Court abused its discretion when it enjoined the defendants from "prosecuting or participating in the action before the United States District Court for the Southern District of New York" which the defendants had filed after the initiation of the instant, declaratory judgment action. For the reasons set forth, we affirm the District Court's order.

The defendants (collectively "Recording Industry") to this action own a significant number of copyrights in sound recordings which are allegedly shared through the Aimster online service. The plaintiffs (collectively "Aimster") brought this declara-

---

* Frank J. Magill, United States Circuit Judge, of the United States Court of Appeals for the Eight Circuit, sitting by designation.

tory judgment action to settle the question of whether their activities violate the defendants' copyrights. The Recording Industry argues that this declaratory judgment action was improperly filed against them in anticipation of their own impending coercive suit, which they filed a few weeks later in the Southern District of New York. They thus challenge the District Court's decision, based on the first-filed rule, to enjoin them from prosecuting the coercive suit.

The dispute between these parties began on April 3, 2001, when one of the defendants sent a demand letter to plaintiff BuddyUSA. The letter stated the Recording Industry's position that the operation of Aimster violated copyright law, reviewed the Recording Industry's participation in copyright infringement litigation against the online file-sharing service called Napster, and closed with a demand that BuddyUSA "immediately take steps to prevent the dissemination of infringing sound recordings owned by our member companies." The letter warned that BuddyUSA had one week to comply or the Recording Industry would have "little choice" but to "seek additional legal remedies."

The parties give differing accounts of what followed this letter. According to the Recording Industry, BuddyUSA made two phone calls during which it indicated that it would attempt to comply with the Recording Industry's demands by, among other things, developing blocking technology that protects copyrights. It also agreed to schedule two meetings to explore the issues raised by the letter. Neither of those meetings took place, and the Recording Industry argues that those meetings were arranged only to delay legal action. BuddyUSA canceled the first scheduled meeting, asserting travel problems; on the day of October the second

meeting, BuddyUSA filed the instant action in the Northern District of New York.

Aimster argues that the Recording Industry has misconstrued the response to the demand letter, manufacturing a sense that the instant action was improperly anticipatory. They assert that after receiving the April 3rd letter, they attempted to contact the Recording Industry representatives on several occasions, but did not succeed until April 11. When the parties finally spoke, Aimster contends, no Aimster representative ever stated that they would accede to the Recording Industry's demands. Instead, they discussed an agreement that BuddyUSA was negotiating with a third party for the sale of digitized sound recordings over the Internet. Nor did Aimster indicate that it was implementing technology to protect copyrights (i.e., blocking technology), but instead technology to enable Aimster users to protect their privacy. Aimster also notes that the Recording Industry's affidavits never indicate that, but for the canceled meetings, legal action would have commenced earlier.

The District Court had issued a T.R.O. prohibiting the defendants from proceeding with the Southern District action, and later held a hearing on whether to dismiss the complaint, transfer it to the Southern District or convert the T.R.O. into a preliminary injunction. The District Court, after hearing hours of oral argument, decided to do the latter. The court issued an opinion which sets forth all of the details concerning the demand letter and Aimster's post-letter behavior, and, "after considering the litigation situation as a whole," held that the plaintiffs did not bring this action in anticipation of a suit by the Recording Industry. The Recording Industry challenges the propriety of the District Court adherence to the first-filed rule.

"The general rule in this Circuit is that, as a principle of sound judicial administration, the first suit should have priority, absent the showing of balance of convenience in favor of the second action or unless there are special circumstances which justify giving priority to the second." *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969) (citations and quotation marks omitted); *accord Mattel, Inc. v. Louis Marx & Co., Inc.*, 353 F.2d 421, 423 (2d Cir.1965), *cert. dismissed*, 384 U.S. 948, 86 S.Ct. 1475, 16 L.Ed.2d 546 (1966); *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1025 (2d Cir.1991). "The first to file rule embodies considerations of judicial administration and conservation of resources." *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir.1989).

One type of special circumstance is present where the first, declaratory action is filed in response to a direct threat of litigation. "When the declaratory action has been triggered by a notice letter, this equitable consideration may be a factor in the decision to allow the later filed action to proceed to judgment in the plaintiffs' chosen forum." *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). "[T]he federal declaratory judgment is not a prize to the winner of a race to the courthouses." *Id.* (quoting *Perez v. Ledesma*, 401 U.S. 82, 119 n. 12, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971) (Brennan J. dissenting)).

Following *Factors*, district courts have typically found an exception to the first-filed rule where declaratory actions are filed in response to demand letters that give specific warnings as to deadlines and subsequent legal action. In *Fed. Ins. Co. v. May Dep't Stores Co.*, 808 F.Supp. 347 (S.D.N.Y.1992), the court held that one can infer forum shopping from the fact that the declaratory action was filed after receipt of letter notice stating that if the sender's claim was not satisfied by a specific date, then defendant would sue. *Id.* at 350. In *Chicago Ins. Co. v. Holzer,* the district court held that the specific warning requirement was met by a notice letter stating that if the recipient's decision "remains unaltered, we will commence suit in a court of appropriate jurisdiction in forty eight (48) hours." 2000 WL 777907, at *1 (S.D.N.Y. June 16, 2000). The district court also noted that the recipient responded by filing suit in 24 hours. *See id.* at *3. Taken together, these two facts supported the conclusion that the first-filed suit was an attempt to preempt legal action. *See id.* Finally, the court in *Mondo, Inc. v. Spitz* reached a similar conclusion where a declaratory judgment action was filed after receipt of a letter stating the sender's "intention to file suit in California if settlement negotiations were not fruitful." 1998 WL 17744, at *1 (S.D.N.Y. Jan.16, 1998). The recipient of the letter filed a declaratory judgment action two weeks later. *See id.*

By contrast, district courts have often refused to characterize a suit as anticipatory where it is filed in response to a notice letter that does not explicitly "inform[ ] a defendant of the intention to file suit, a filing date, and/or a specific forum for the filing of the suit...." *J. Lyons & Co., Ltd. v. Republic of Tea, Inc.*, 892 F.Supp. 486, 491 (S.D.N.Y.1995). For example, a declaratory action is not anticipatory where it is filed in response to a letter that is indicative of negotiations. *See, e.g., id.* In *J. Lyons,* the sender's demand letter mentioned "the possibility of legal actions" without specifying date or forum, and when the alleged infringer refused to cease and desist, the sender merely responded that it would take the refusal "under advisement." *Id.* In this context, the declaratory action was not anticipatory as re-

quired in order to justify departure from the first-filed rule. Similarly, a declaratory action filed in response to a notice letter which stated that the sender "hoped to avoid litigation" would be allowed to proceed over a second-filed coercive action. *Employers Ins. of Wausau v. Prudential Ins. Co. of America,* 763 F.Supp. 46, 49 (S.D.N.Y.1991). Such a letter was deemed an attempt to initiate settlement negotiations rather than notice of suit. *See id.*

In the case before us, the record is ambiguous as to whether the instant action was improperly anticipatory. Both in their briefs and at oral argument, the plaintiffs and defendants have both made a persuasive case in support of their interpretation of events. In light of the ambiguities which are present, we are not convinced that the District Court abused its discretion. *See Adam v. Jacobs,* 950 F.2d 89, 92 (2d Cir.1991). The notice letter was somewhat vague about what legal action, if any, the Recording Industry planned to take. And the subsequent behavior of the plaintiffs and defendants do not clearly indicate that the instant suit was anticipatory. The District Court applied the correct rule of law, properly considering the totality of the events rather than employing any bright line rule. Therefore, we will not disturb the District Court's order.

We have considered all of the claims raised by the Recording Industry, and we find them to be without merit. For the reasons set forth, we AFFIRM the judgment of the District Court.